# In the United States Court of Federal Claims

Bid Protest
No. 17-2047C
Filed Under Seal: March 12, 2018
Reissued For Publication: April 13, 2018[*]

|  |  |  |
|---|---|---|
| PINNACLE SOLUTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Post-Award Bid Protest; Judgment Upon |
| v. | ) | the Administrative Record; RCFC 52.1; |
| | ) | Injunctive Relief; Supplementing the |
| THE UNITED STATES, | ) | Administrative Record. |
| | ) | |
| Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| YULISTA TACTICAL SERVICES, LLC, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| | ) | |

*Aron C. Beezley*, Counsel of Record, *Lisa A. Markman*, Of Counsel, *Sarah S. Osborne*, Of Counsel, Bradley Arant Boult Cummings, Washington, DC, for plaintiff.

*Jeffrey D. Klingman*, Trial Attorney, *Elizabeth M. Hosford*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Chad A. Readler*, Acting Assistant Attorney General, United States Department of Justice, Washington, DC, *Karen M. Reilley*, Office of General Counsel, NASA Headquarters, Washington, DC, for defendant.

*S. Lane Tucker*, Counsel of Record, Stoel Rives LLP, Anchorage, AK, for defendant–intervenor.

---

[*] This Memorandum Opinion and Order was originally filed under seal on March 12, 2018 (docket entry no. 53). The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted from the Memorandum Opinion and Order. The parties filed a joint status report on April 12, 2018 (docket entry no. 55) proposing certain redactions which the Court has adopted. And so, the Court is reissuing its Memorandum Opinion and Order dated March 12, 2018, with the agreed upon redactions indicated by three consecutive asterisks within brackets ([***]).

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.   INTRODUCTION

In this post-award bid protest matter, Pinnacle Solutions, Inc. ("Pinnacle") challenges the National Aeronautics and Space Administration's ("NASA") decision to award a contract for aircraft logistics, integration, configuration management, and engineering services (the "ALICE Contract") to Yulista Tactical Services, LLC ("Yulista"). As relief, Pinnacle requests that the Court: (1) set aside NASA's award decision; (2) require NASA to include Pinnacle's proposal for the ALICE Contract in the competitive range; and (3) enjoin NASA from proceeding with the transition and performance under the ALICE Contract. Am. Compl. at 2.

The parties have filed cross-motions for judgment upon the administrative record, pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"). *See generally* Pl. Mot.; Def. Mot.; Def.-Int. Mot. Pinnacle has also filed motions for preliminary and permanent injunctive relief and declaratory relief, and a motion to strike. *See generally* Pl. Mot. for Prelim. Inj.; Pl. Mot.; Pl. Mot. to Strike. For the reasons set forth below, the Court: (1) **DENIES** Pinnacle's motions for judgment upon the administrative record, preliminary and permanent injunctive relief, and declaratory relief; (2) **GRANTS** the government's and Yulista's cross-motions for judgment upon the administrative record; (3) **GRANTS-IN-PART** and **DENIES-IN-PART** Pinnacle's motion to strike; and (4) **DISMISSES** the complaint.

## II.   PROCEDURAL AND FACTUAL BACKGROUND[1]

### A.   Factual Background

In this post-award bid protest matter, Pinnacle challenges NASA's decision to award a contract for aircraft logistics, integration, configuration management, and engineering services to Yulista, pursuant to Request for Proposal No. NNJ16556087R (the "RFP"). *See* AR Tab 22 at 5597. Specifically, Pinnacle challenges NASA's evaluation process for the award of the ALICE Contract and, in particular, the agency's decision to exclude Pinnacle's proposal from the

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the administrative record as amended ("AR"); plaintiff's Amended Complaint ("Am. Compl."); and the government's motion for judgment upon the administrative record ("Def. Mot."). Except where otherwise noted, all facts recited herein are undisputed.

competitive range for this contract.  *See generally* Am. Compl.  As relief, Pinnacle seeks to:  (1) set aside NASA's award decision; (2) require NASA to include Pinnacle's proposal for the ALICE Contract in the competitive range; and (3) enjoin NASA from proceeding with the transition and performance under the ALICE Contract.  *Id.* at 2.

### 1.      The ALICE Contract And The RFP

The key facts in this bid protest matter are undisputed.  The ALICE Contract involves a competitive procurement to provide aircraft logistics, integration, configuration management, and engineering services at several bases affiliated with NASA's Johnson Space Center.  AR Tab 22 at 5597.  The contract is a single fixed-price, cost-plus-award-fee, and cost-plus-fixed-fee indefinite-delivery/indefinite-quantity contract.  *Id*.

On August 19, 2016, NASA issued the RFP for the ALICE Contract.  *Id.*  Under the terms of the RFP, NASA sought proposals to provide ALICE services for a two-month phase-in period—followed by a 16-month base period and two two-year option periods.  *Id.*

The RFP requires that NASA evaluate responsive proposals under three factors:  (1) mission suitability; (2) past performance; and (3) cost/price.  AR Tab 23 at 8654.  This evaluation is to be based upon a best value to the government determination.  *Id.*  In this regard, the RFP provides that the mission suitability and past performance factors are approximately equal in importance, and that each of these two factors is more important than the cost/price factor.  *Id.*  The RFP also provides that the mission suitability factor, consists of three subfactors: management approach; technical approach; and safety and health approach.  *Id.* at 8654-56.

In addition, the RFP identifies three elements related to the management approach subfactor:  overall management approach; staffing approach; and contract phase-in approach.  AR Tab 22 at 6113.  The RFP also identifies three elements related to the technical approach subfactor:  technical understanding of requirements; resources; and basis of estimate.  *Id.* at 6114.

Lastly, the source selection plan for the RFP provides for the assignment of adjectival ratings under each of the mission suitability subfactors—management approach; technical approach; and safety and health approach—consistent with Section 1815.305(a)(3)(A) of the NASA Federal Acquisition Regulation Supplement.  AR Tab 2 at 37; *see also* AR Tab 22 at

6146.  These ratings are as follows:  excellent (91-100 percent of points); very good (71-90 percent); good (51-70 percent); fair (31-50 percent); and poor (0-30 percent).  AR Tab 2 at 38.

### 2.      NASA's Initial Evaluation And Pinnacle's First GAO Protest

On October 13, 2016, NASA received responsive proposals from three offerors—Pinnacle, Yulista, and Arctic Slope Technical Services, Inc. ("Arctic Slope").  AR Tab 24 at 8904; AR Tab 36 at 10422; AR Tab 37 at 11204.  NASA evaluated each of these proposal under the mission suitability factor, management approach subfactor "for overall demonstrated comprehensive understanding, effectiveness, efficiency, and feasibility."  AR Tab 23 at 8655.  NASA also evaluated the management plans submitted by each offeror, which were to address, among other things, relationships with subcontractors, corporate philosophy, and management approach, and how the offeror would manage its workforce "to ensure adherence to work schedules and break times while supporting dynamic flight schedules."  AR Tab 22 at 5847.

In addition, NASA evaluated the labor-relations plans submitted by each offeror, which were required to, among other things, describe the organized-labor plan for the ALICE Contract, include a list of specific positions falling under each collective bargaining agreement, and describe how the offeror intended to promote and maintain harmonious labor-relations during contract performance.  *Id.* at 5877.  NASA also evaluated total-compensation plans for each offeror, which were required to, among other things "identify and discuss wages, salaries, and fringe benefits for professional employees and non-exempt service employees," provide the offeror's company salary range/wage information, and provide written support to demonstrate that the proposed compensation was reasonable.  *Id.* at 5889-90; Tab 23 at 8609.

Based upon this information, NASA evaluated each proposal to identify "significant strengths," "strengths," "weaknesses," and "significant weaknesses."  AR Tab 3 at 66, Tab 23 at 8654.  In addition, NASA assigned a confidence rating for each proposal based upon recent and relevant past performance, pursuant to the requirements of the RFP.  AR Tab 23 at 8656-57.  The results of NASA's initial evaluation of the three responsive proposals are set forth below:

| NASA's Initial Evaluation: December 14, 2016 | | | |
|---|---|---|---|
| **Factor and Subfactor** | **Yulista** | **Pinnacle** | **Arctic Slope** |
| Mission Suitability | 719 | 439 | 354 |
| Management Approach | Very Good: 518 | Fair: 266 | Poor: 189 |
| Technical Approach | Good: 102 | Fair: 68 | Fair: 60 |
| Safety & Health Approach | Good: 99 | Good: 105 | Good: 105 |
| Past Performance Level of Confidence | Moderate | Moderate | Low |
| Cost/Price (in millions) | $190.2 | $180.6 | $171.7 |

AR Tab 45 at 12030, 12032.

Based upon NASA's initial evaluation of responsive proposals, the agency assigned Pinnacle's proposal: (1) no significant strengths; three strengths; eight weaknesses; and one significant weakness with respect to the mission suitability factor, management approach subfactor; (2) two weaknesses under the mission suitability factor, technical-approach subfactor; and (3) one strength and one weakness under the mission suitability factor, safety and health subfactor. *See generally* AR Tab 10. NASA also found that Pinnacle's proposal warranted a "moderate confidence" rating under the past performance factor. AR Tab 13 at 4987. But, the contracting officer concluded that Pinnacle's proposal was "not one of the most highly rated proposals." AR Tab 46 at 12130. And so, NASA established a competitive range for the ALICE Contract comprised of only Yulista's proposal.[2] *Id.*

Pinnacle, subsequently filed a protest of the contracting officer's decision to exclude its proposal from the competitive range before the United States Government Accountability Office (the "GAO") for reasons not germane to this bid protest dispute. AR Tab 19 at 5512; *see generally* Tab 14. On May 19, 2017, the GAO sustained Pinnacle's protest and recommended that NASA reevaluate Pinnacle's proposal. AR Tab 19 at 5524.

---

[2] NASA concluded that, although Pinnacle's past performance rating was as high as Yulista's—and Pinnacle's probable cost was somewhat lower than Yulista's—Pinnacle's substantially-lower mission suitability score warranted the exclusion of Pinnacle's proposal from the competitive range. AR Tab 46 at 12130.

### 3.    NASA's Reevaluation And Pinnacle's Second GAO Protest

After the GAO sustained Pinnacle's protest, NASA conducted a reevaluation of all three of the original responsive proposals that the agency received in connection with the RFP.  *See* AR Tab 21 at 5546.  NASA appointed a new contracting officer and the contracting officer reconvened NASA's Source Evaluation Board to reevaluate each proposal.  AR Tab 44 at 12006.

During NASA's reevaluation of Pinnacle's proposal, the agency assigned Pinnacle's proposal three strengths; one significant weakness; and nine weaknesses with respect to the mission suitability factor, management approach subfactor.  AR Tab 28 at 9334-65; *see also* AR Tab 21a at 5596.21-.27.  NASA also assigned two weaknesses under the mission suitability factor, technical approach subfactor.  AR Tab 28 at 9366-70.  Lastly, NASA assigned one strength and one weakness under the mission suitability factor, safety and health subfactor for Pinnacle's proposal.  *Id.* at 9371-75.  Based upon these findings, NASA awarded Pinnacle's proposal a rating of 467 points out of a possible 1000 for the mission suitability subfactor.[3]  AR Tab 48 at 12249.

During NASA's reevaluation of Pinnacle's proposal with respect to the past performance factor, NASA obtained and considered two updated contractor performance assessment reports ("CPARS") for work that Pinnacle performed on other contracts—the AMOC contract and the KC-10 ATS contract.  AR Tab 44 at 12006; s*ee also* AR Tab 21a at 5596.5, 5596.11.  NASA rated Pinnacle's past performance as "moderate confidence" in an internal competitive range presentation dated August 9, 2017.  AR Tab 47 at 12132, 12214.  Thereafter, on August 11, 2017, a CPARS for Pinnacle's work on another contract—the FRPP&C contract—became available to NASA.  AR Tab 32 at 10325.  Because NASA found that this contract was not relevant to the ALICE Contract, NASA did not consider this report.  AR Tab 35 at 10374.  Lastly, NASA's reevaluation found the probable cost for Pinnacle's proposal to be $180.6 million.  AR Tab 46 at 12129-30.

During the reevaluation process for Yulista's proposal, NASA assigned three significant strengths, two strengths, eight weaknesses, and no significant weaknesses with respect to the

---

[3] The weaknesses assigned by NASA during the reevaluation of Pinnacle's proposal differ from those assigned during the initial evaluation.  *Compare* AR Tab 28 at 9340-75, *with* AR Tab 13 at 4975-80.

mission suitability factor.  AR Tab 36 at 11099-126.  Based upon these findings, NASA awarded
Yulista's proposal a rating of 785 points out of a possible 1000 under the mission suitability
subfactor.  AR Tab 48 at 12249.  NASA also rated Yulista's proposal under the past performance
factor as "moderate confidence."  AR Tab 36 at 11127.  In addition, NASA found the probable
cost of Yulista's proposal to be $190.2 million.  AR Tab 46 at 12129-30.  The results of
NASA's reevaluation are set forth below:

| NASA's Reevaluation: August 9, 2017 | | | |
|---|---|---|---|
| **Factor and Subfactor** | **Yulista** | **Pinnacle** | **Arctic Slope** |
| Mission Suitability | 785 | 467 | 426 |
| Management Approach | Very Good: 581 | Good: 294 | Good: 231 |
| Technical Approach | Good: 105 | Fair: 68 | Good: 60 |
| Safety & Health Approach | Good: 99 | Fair: 105 | Very Good: 135 |
| Past Performance Level of Confidence | Moderate | Moderate | Low |
| Cost/Price (in millions) | $190.2 | $180.6 | $171.7 |

AR Tab 48 at 12249; *see also* AR Tab 47 at 12149-51 (including scoring and adjectival ratings
for the mission suitability subfactors).

On August 17, 2018, NASA's Source Evaluation Board determined that only Yulista's
proposal warranted inclusion in the competitive range for the ALICE Contract.  AR Tab 48 at
12252.  And so, on August 18, 2017, NASA informed Pinnacle that Pinnacle would be excluded
from the competitive range based upon the agency's reevaluation.  AR Tab 44 at 1207.

Pinnacle, subsequently, filed a second protest with the GAO challenging NASA's
decision.  *Id.*; *see generally* AR Tab 32.  The GAO dismissed Pinnacle's protest upon the ground
that the protest lacked merit on December 11, 2017.  AR Tab 44 at 12008.

Pinnacle commenced this action on December 27, 2017.  *See generally* Compl.

B.   **Procedural Background**

On December 27, 2017, Pinnacle filed the complaint in this bid protest matter and a
motion for a preliminary injunction.  *See generally id.*; Pl. Mot. Prelim. Inj.  On January 2, 2018,
Yulista filed an unopposed motion to intervene, which the Court granted on January 2, 2018.

*See generally* Mot. to Intervene; Order, dated Jan. 2, 2018.  On January 2, 2018, the Court entered a Protective Order in this matter.  *See generally* Protective Order.

On January 19, 2018, the government filed the administrative record.  On January 24, 2018, Pinnacle filed an amended complaint.  *See generally* Am. Compl.  On January 24, 2018, Pinnacle filed motions for judgement upon the administrative record, permanent injunctive relief, and declaratory relief.  *See generally* Pl. Mot.

On February 7, 2018, the government and Yulista filed their respective cross-motions for judgment upon the administrative record and responses and oppositions to Pinnacle's motions for preliminary and permanent injunctive relief, declaratory relief, and judgment upon the administrative record.  *See generally* Def. Mot.; Def.-Int. Mot.  On February 12, 2018, the government filed an amended administrative record.  *See generally* AR.

On February 12, 2018, Pinnacle filed a response and opposition to the government's and Yulista's respective cross-motions for judgment upon the administrative record, and a reply in support of its motions for judgment upon the administrative record and for injunctive and declaratory relief.  *See generally* Pl. Mot.  On February 14, 2018, Pinnacle filed a motion to strike the declarations of Brian Kelly, Perry Lamar Mueller, and Alice Pursell, which have been filed in support of the government's cross-motion for judgment upon the administrative record. *See generally* Pl. Mot. to Strike.

On February 20, 2018, the government and Yulista filed their respective reply briefs in support of their cross-motions for judgment upon the administrative record.  *See generally* Def. Reply; Def.-Int. Reply.  On February 26, 2018, the government filed a response and opposition to Pinnacle's motion to strike.  *See generally* Def. Resp. to Mot. to Strike.  On February 28, 2018, Pinnacle filed a reply in support of its motion to strike.  *See generally* Pl. Reply to Mot. to Strike.

On February 28, 2018, the Court held oral argument on the parties' motions.  These matters having been fully briefed, the Court resolves the pending motions.

## III.    LEGAL STANDARDS

### A.    Bid Protest Jurisdiction

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). This Court reviews agency actions in bid protest matters under the Administrative Procedure Act's ("APA") "arbitrary and capricious" standard. *See id.* § 1491(b)(4) (adopting the standard of review set forth in the Administrative Procedure Act). And so, under the APA's standard, an award may be set aside if:  "'(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

> In this regard, the Federal Circuit has explained that:
>
> When a challenge is brought on the first ground, the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis. When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Id.* at 1351 (internal citations omitted). When reviewing an agency's procurement decision, the Court also recognizes that the agency's decision is entitled to a "presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (citations omitted). In addition, the Court should not substitute its judgment for that of the agency. *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997). And so, "'[t]he protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis or in violation of applicable procurement law.'" *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 648 (2003) (quoting *Info. Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003)).

This standard "is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).  As long as there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion . . . ." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (citation omitted).  But, if "the agency entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency," then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (internal quotation marks omitted).

## B.  Best Value Determinations

This Court affords contracting officers a great deal of discretion in making contract award decisions, particularly when the contract is to be awarded to the offeror that will provide the best value to the government.  *See TRW, Inc. v. Unisys Corp.*, 98 F.3d 1325, 1327-28 (Fed. Cir. 1996); *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996); *Lockheed Missiles & Space Co. v. Bentsen*, 4 F.3d 955, 958–59 (Fed. Cir. 1993). *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1355-56 (Fed. Cir. 2004).   The Court has held that the government's best value determination should not be disturbed, if the government documents its analysis and includes a rationale for any business judgments and trade-offs made in reaching that decision. *See Blackwater Lodge & Training Center*, *v. United States*, 86 Fed. Cl. 488, 514 (2009).   And so, a decision to award a contract is least vulnerable to challenge when that decision is based upon a best value determination.  *PlanetSpace, Inc. v. United Sates*, 96 Fed. Cl. 119, 125 (2010).

The Federal Circuit has also recognized that contracting officers have broad discretion in determining the competitive range.  *Birch & Davis Int'l v. Christopher*, 4 F.3d. 970, 973 (Fed. Cir. 1993).  To that end, this Court has upheld competitive range decisions that involve only one offeror.  *See, e.g.*, *Int'l Outsourcing Servs. LLC v. United Sates*, 69 Fed. Cl. 40, 51, n.12 (2005); *CEdge Software Consultants LLC v. United States*, 117 Fed. Cl. 419, 436 (2012).

### C.      Judgement Upon The Administrative Record

Generally, RCFC 52.1 limits this Court's review of an agency's procurement decision to the administrative record.  RCFC 52.1; *see Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) ("[T]he focal point for judicial review should be the administrative record already in existence.").  And so, unlike a summary judgment motion brought pursuant to Rule 56, "the existence of genuine issues of material fact does not preclude judgment upon the administrative record" under Rule 52.1.  *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242 (2011) (citations omitted); RCFC 56.  Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record."  *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).

### D.      Injunctive Relief

Under its bid protest jurisdiction, the Court "may award any relief [it] considers proper, including declaratory and injunctive relief . . . ."  28 U.S.C. § 1491(b)(2); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009).  In deciding whether to issue a permanent injunction, the Court "considers:  (1) whether . . . the plaintiff has succeeded upon the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief."  *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.")); *see also Centech Grp., Inc.*, 554 F.3d at 1037.

In this regard, the Federal Circuit has held that:

> No one factor, taken individually, is necessarily dispositive. If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others. If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.

*FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citations omitted).  This Court has also found success upon the merits to be "the most important factor for a court to consider when

deciding whether to issue injunctive relief." *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 369 (2012) (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1312 (Fed. Cir. 2007)).  But, while success upon the merits is necessary, it is not sufficient alone for a plaintiff to establish that it is entitled to injunctive relief.  *See Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) ("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citations omitted)).  In addition, a plaintiff who cannot demonstrate actual success upon the merits cannot prevail upon a motion for permanent injunctive relief.  *See Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004) (finding that a plaintiff who cannot demonstrate likely success upon the merits cannot prevail upon its motion for preliminary injunctive relief).

### E.    Supplementing The Administrative Record

The United States Court of Appeals for the Federal Circuit held in *Axiom Resource Management* that the "parties' ability to supplement the administrative record is limited," and that the administrative record should only be supplemented "if the existing record is insufficient to permit meaningful review consistent with the APA."  *Axiom*, 564 F.3d at 1379-81; *see also Caddell Constr. Co., Inc. v. United States*, 111 Fed. Cl. 49, 93 (2013).  The Supreme Court has also held in *Camp v. Pitts* that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."  *Camp v. Pitts*, 411 U.S. 138, 142 (1973).  This focus is maintained in order to prevent courts from using new evidence to "convert the arbitrary and capricious standard into effectively de novo review."  *L-3 Commc'ns EOTech, Inc. v. United States*, 87 Fed. Cl. 656, 671 (2009) (citations omitted).

This Court has interpreted the Federal Circuit's directive in *Axiom* to mean that supplementation of the administrative record is permitted to correct mistakes and fill gaps, but is not permitted when the documents proffered are unnecessary for an effective review of the government's procurement decision.  *Id.* at 672.  And so, this Court has precluded supplementation of the administrative record with declarations that contain "post-hoc contentions of fact and argument."  *Id*.

## IV.    LEGAL ANALYSIS

The parties have filed cross-motions for judgment upon the administrative record pursuant to RCFC 52.1 on the issue of whether NASA's decisions to exclude Pinnacle's proposal from the competitive range for the ALICE Contract and to award that contract to Yulista was lawful and rational. *See generally* Pl. Mot.; Def. Mot.; Def.-Int. Mot.  Pinnacle has also filed motions for preliminary and permanent injunctive relief and declaratory relief, and a motion to strike certain declarations filed in connection with the government's cross-motion for judgment upon the administrative record. *See* Pl. Mot. Prelim. Inj.; Pl. Mot.; Pl. Mot. to Strike.

Pinnacle argues in its motion for judgment upon the administrative record that NASA's evaluation process and award decision were not rational, because the agency:  (1) arbitrarily assigned weaknesses to Pinnacle's proposal—and ignored other strengths in that proposal—with respect to the mission suitability factor; (2) evaluated Pinnacle's past performance based upon outdated information; (3) improperly abandoned certain weaknesses and a significant weakness found during the initial evaluation of Yulista's proposal; and (4) unequally evaluated the proposals submitted by Pinnacle and Yulista. *See* Pl. Mot. at 7-45.  The government and Yulista counter that NASA conducted a sound evaluation process for the ALICE Contract that was consistent with the requirements of the RFP and applicable law. *See* Def. Mot. at 15-50; Def.-Int. Mot. at 1-9.

Pinnacle also requests that the Court strike three declarations that the government has submitted in support of the government's cross-motion for judgment upon the administrative record, because these declarations should not be included in the administrative record. *See generally* Pl. Mot. to Strike.  The government opposes Pinnacle's motion to strike upon the ground that it need not supplement the administrative record with these documents because the declarations address Pinnacle's request for injunctive relief. *See generally* Def. Resp. to Mot. to Strike.

For the reasons discussed below, a review of the administrative record shows that it is not appropriate to supplement the extensive administrative record in this matter with the declaration of the contracting officer for the ALICE Contract.  The record evidence also makes clear that NASA's evaluation process in connection with the award of the ALICE Contract was reasonable and conducted in accordance with the terms of the RFP and applicable law.  And so, the Court

13

must:  (1) **DENY** Pinnacle's motions for judgment upon the administrative record and for preliminary and permanent injunctive relief and declaratory relief; (2) **GRANT** the government's and Yulista's cross-motions for judgment upon the administrative record; (3) **GRANT-IN-PART** and **DENY-IN-PART** Pinnacle's motion to strike; and (4) **DISMISS** the complaint.

### A.      The Court Grants-In-Part And Denies-In-Part Pinnacle's Motion To Strike

As a preliminary matter, the Court grants-in-part and denies-in-part Pinnacle's motion to strike.  In its motion to strike, Pinnacle requests that the Court strike the Declarations of Brian Kelly, Perry Lamar Mueller, and Alice Pursell, which have been filed in support of the government's cross-motion for judgment upon the administrative record, because these documents were not a part of the record before NASA at the time that the agency evaluated Pinnacle's proposal and reached the decision to award the ALICE Contract to Yulista.  Pl. Mot. to Strike at 3-5.  For this reason, Pinnacle argues that these declarations improperly address the merits of this bid protest dispute and that the government has not shown that the declarations should be included in the administrative record.  *Id.*; *see also* Oral Arg. Tr. at 24:24-25:20.

As Pinnacle correctly observes in its motion to strike, the focal point of the Court's review of NASA's evaluation process and award decision for the ALICE Contract should be the administrative record already in existence, not some new record made initially in the reviewing court.  *Camp v. Pitts*, 411 U.S. 138, 142 (1973).  And so, the administrative record should only be supplemented in this case to correct mistakes and fill gaps "if the existing record is insufficient to permit meaningful review consistent with the APA."  *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379-81 (Fed. Cir. 2009).

A careful review of the subject declarations and the government's cross-motion shows that the government relies upon the Declarations of Brian Kelly and Alice Pursell to show that Pinnacle will not suffer irreparable harm if the Court declines to grant Pinnacle's request for preliminary and permanent injunctive relief.  *See* Def. Mot. at 57-59; *see generally* Kelly Decl.; Pursell Decl.  This review also shows that the government provides the Declaration of Perry Lamar Mueller—the current contracting officer for the ALICE Contract—to provide additional details about NASA's evaluation of the past performance factor in connection with the award of the ALICE Contract.  Mueller Decl. at ¶¶ 2-5; *see also* Def. Mot. at 51-53.

While the government need not seek to supplement the administrative record with documents that address the injunctive relief factors, the government may not rely upon declarations that address the merits of this dispute without successfully seeking to supplement the administrative record. *See, e.g.*, *AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 366-67 (2009); *see also* Oral Arg. Tr. at 53:18-58:11. Here, a reading of the Pursell and Kelley Declarations shows that these documents solely address Pinnacle's request for injunctive relief. And so, the Court does not find the filing of these two declarations to run afoul of RCFC 52.1. *AshBritt*, 87 Fed. Cl. at 366-67.

But, to the extent that the Mueller Declaration addresses the evaluation process for the ALICE Contract, this declaration improperly addresses the merits of this dispute. *See* Mueller Decl. at ¶¶ 2-5; s*ee also L-3 Commc'ns EOTech, Inc. v. United States*, 87 Fed. Cl. 656, 672 (2009). And so, the Court **GRANTS** Pinnacle's motion to strike with respect to the Declaration of Perry Lamar Mueller and **DENIES** Pinnacle's motion to strike with respect to the Declarations of Brian Kelly and Alice Pursell.

### B.     Pinnacle Fails To Establish Prejudice

With respect to the merits of this bid protest dispute, the Court observes at the outset of its analysis that the administrative record makes clear that Pinnacle cannot show that it has been prejudiced by NASA's alleged evaluation errors during the procurement process for the ALICE Contract. *See* AR Tab 47 at 12151; Oral Arg. Tr. at 28:17-32:11, 38:1-39:8, 46:13-47:22, 60:23-61:13. It is well-established that to prevail in this bid protest dispute, Pinnacle must show a significant, prejudicial error in the procurement process with respect to any violations of procurement procedure. *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed. Cir. 1996) ("To establish competitive prejudice, a protester must demonstrate that but for the alleged error, there was a *substantial chance* that [it] would receive an award—that it was within the zone of active consideration."); *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996). And so, Pinnacle must show that there was a substantial chance it would have been awarded the ALICE Contract but for that error. *Statistica*, 102 F.3d at 1582; *see also L-3 Commc'ns EOTech, Inc. v. United States*, 83 Fed. Cl. 643, 660 (2008) (applying the substantial chance standard to inclusion in the competitive range).

In this case, the administrative record shows that NASA assigned 12 weaknesses and one significant weakness to Pinnacle's proposal during the reevaluation of Pinnacle's proposal. AR Tab 28 at 9340-75. The administrative record also shows that, while Pinnacle proposed the lowest price and received the same rating as Yulista under the past performance factor, Pinnacle received a rating for the mission suitability factor that was 318 points lower than Yulista's rating for this factor. AR Tab 47 at 12149, 12151. Given this significant difference, Pinnacle bears a heavy burden to show that, but for the errors alleged in this protest, it had a substantial chance of being awarded the ALICE Contract. *Statistica*, 102 F.3d at 1582. As discussed in detail below, the record evidence in this case makes clear that Pinnacle cannot meet this heavy burden in this case. *Id.*; *Data Gen.*, 78 F.3d at 1562.

## C.  NASA's Evaluation Of The Mission Suitability Factor Was Reasonable

As an initial matter, Pinnacle's objections to NASA's evaluation of the mission suitability factor under the RFP are unsubstantiated by the record evidence. In this regard, the RFP provides that NASA will consider three subfactors when evaluating mission suitability: management approach, technical approach, and safety and health approach. AR Tab 22 at 6113; Tab 23 at 8654. Pinnacle challenges weaknesses that NASA assigned to its proposal with respect to each of these subfactors. *See* Pl. Mot. at 7-29. Pinnacle also argues that NASA should have assigned other strengths to its proposal with respect to the management approach and technical approach subfactors. *See id.* at 37-42. Pinnacle's claims lack evidentiary support for several reasons.

### 1.  NASA Reasonably Evaluated Pinnacle's Proposal Under The Management Approach Subfactor

First, the administrative record shows that NASA reasonably evaluated Pinnacle's proposal with respect to the management approach subfactor.

#### i.  NASA Reasonably Assigned A Weakness For Pinnacle's Plan To Ensure Adherence To Work Schedules And Breaks

Pinnacle's objection to NASA's decision to assign a weakness to its proposal in connection with the RFP's requirement that Pinnacle demonstrate how it would manage its workforce "to ensure adherence to work schedules and break times while supporting dynamic flight schedules" is unsubstantiated by the record evidence. AR Tab 22 at 5847; *see also* Pl.

Mot. at 8-11.  The administrative record shows that NASA assigned this weakness because the agency found that Pinnacle's proposal increased the risk of abuse regarding adherence to posted work and break schedules.  AR Tab 28 at 9340.  While Pinnacle correctly observes that its proposal provides that Pinnacle would post work schedules and that supervisors would monitor timekeeping and timesheets, Pinnacle points to no evidence in the administrative record to show that it complied with the specific requirement in the RFP to show *how* Pinnacle would ensure adherence to work schedules and break times.  *Id.*; *see also* AR Tab 22 at 5847 ("Describe how you manage your workforce to ensure adherence to work schedules and break times while supporting dynamic flight schedules."); AR Tab 24 at 8964, 8974-75; *see generally* AR Tab 24 at 8974-75.  And so, Pinnacle fails to show that NASA irrationally evaluated its proposal with respect to this requirement.

**ii.**     **Pinnacle Has Waived Its Challenge To NASA's Decision Regarding Physically Demanding Positions**

Pinnacle's claim that NASA irrationally assigned a weakness with respect to the RFP's requirement to identify physically demanding positions is also unsubstantiated.  Pl. Mot. at 11-13.  The record evidence shows that NASA assigned a weakness for the management approach subfactor because Pinnacle did not include the water survivor instructor, or team lead, first line supervisor, maintenance positions in the discussion of physically demanding positions contained in Pinnacle's proposal.  AR Tab 28 at 9342.

Pinnacle's objection to the assignment of this weakness appears to be based upon a disagreement with NASA about the meaning of the term "physically demanding positions" as used in the RFP.  *See* Pl. Mot. at 11-13; AR Tab 28 at 9342.  While the RFP clearly requires that Pinnacle identify which positions, exclusive of aircrew, are physically demanding—and that Pinnacle provide physical requirements for each such position—the RFP does not define the term "physically demanding positions."  AR Tab 22 at 5847; Tab 28 at 9342; *see generally* AR Tab 22; AR Tab 23.  Given the clear ambiguity in the RFP regarding the meaning of the term "physically demanding positions," Pinnacle should have raised any concerns about the meaning of this term prior to the close of the bidding process for the ALICE Contract.  Because Pinnacle did not do so, Pinnacle has waived this claim.  *Blue & Gold, Fleet, L.P. v. United States*, 492 F.3d 1308, 1313-15 (Fed. Cir. 2007); *see generally* AR Tab 22 at 5847.

17

### iii.  NASA Reasonably Assigned A Weakness For Pinnacle's Proposed Fringe Benefits

Pinnacle's claim that NASA irrationally assigned a weakness because Pinnacle proposed different fringe benefits for certain employees is also unsupported by the record evidence.  Pl. Mot. at 13-15.  Pinnacle does not dispute that it proposed different fringe benefits for certain employees.  *Id.*  The administrative record also shows that Pinnacle did not explain why having different fringe benefits for certain employees would be reasonable for the ALICE Contract.  AR Tab 28 at 9347; *see also* AR Tab 22 at 5890; AR Tab 24 at 9015-17.  And so, the record evidence shows that NASA reasonably assigned this weakness.

### iv.  NASA Reasonably Assigned A Weakness For Pinnacle's Proposal To Provide Lower Pay To Supervisors

Pinnacle's objection to NASA's decision to assign a weakness to its proposal because Pinnacle proposed providing lower compensation for certain supervisory positions is equally unavailing.  Pl. Mot. at 15-16.  A review of the RFP shows that the RFP requires that Pinnacle provide written support to demonstrate that its proposed compensation is reasonable.  AR Tab 22 at 5890 ("The contractor shall provide written support to demonstrate that its proposed compensation is reasonable.").  But, the record evidence shows that Pinnacle did not explain why it would be reasonable to pay certain supervisors less than the employees that they supervise.  AR Tab 28 at 9350.  And so, again, Pinnacle's objection to NASA's decision to assign this weakness is not supported by the record evidence.

### v.  NASA Reasonably Assigned A Weakness For Pinnacle's Proposal To Tie COLAs To Wage Determinations

Pinnacle's claim that NASA irrationally assigned a weakness because its proposal ties cost of living adjustments ("COLAs") to Department of Labor wage determinations is similarly without merit.  Pl. Mot. at 18-19.  A review of Pinnacle's proposal makes clear that Pinnacle did not address NASA's stated concern in assigning this weakness—that tying COLAs to wage determinations would increase the risk of personnel turnover.  AR Tab 28 at 9353-54; *see also* AR Tab 23 at 8655; AR Tab 24 at 9016.  And so, Pinnacle's claim is not supported by the record evidence.

###### vi. NASA Reasonably Assigned A Weakness Because Pinnacle Failed To Provide A Labor Relations Plan For Its Proposed Subcontractor

Pinnacle's claim that NASA irrationally assigned a weakness because the proposal failed to provide a labor relations plan for its subcontractor, DynCorp International, LLC ("DynCorp"), is also without merit. Pl. Mot. at 19-20. Although the RFP plainly requires that Pinnacle provide a labor relations plan for any subcontractor proposing to work on the ALICE Contract, it is undisputed that Pinnacle did not provide a labor relations plan for DynCorp. AR Tab 22 at 5877 ("A Labor Relations Plan is required from the prime contractor and any subcontractor proposing work on the contract that is currently represented by organized labor."); AR Tab 28 at 9355-56; *see also* Pl. Mot. at 19-20. And so, Pinnacle's claim that NASA erred in assigning this weakness simply lacks merit.

###### vii. NASA Reasonably Assigned A Weakness For Pinnacle's Proposal To Provide Lower Pay To Positions With Greater Responsibility

Pinnacle's objection to NASA's decision to assign a weakness because Pinnacle proposed higher pay for positions with less responsibility is also unsubstantiated by the administrative record. AR Tab 28 at 9357-59. As discussed above, the RFP requires that Pinnacle demonstrate that the compensation proposed in its proposal is reasonable. AR Tab 22 at 5890. But, a review of Pinnacle's proposal shows that Pinnacle failed to explain why it proposed higher pay for certain positions with less responsibility, or why such compensation would be reasonable. AR Tab 24 at 9022. Given this, NASA reasonably determined that the salary rates proposed by Pinnacle would limit the effectiveness and feasibility of Pinnacle's management approach.[4] AR Tab 28 at 9359.

---

[4] Pinnacle's argument that NASA irrationally assigned this weakness because Pinnacle proposed salaries based upon actual salaries paid to incumbent employees currently holding these position also falls flat. *See* Pl. Mot. at 20-22. Even if true, this fact does not resolve the concern raised by NASA—that the difference in pay could adversely affect management of the ALICE Contract. Pl. Resp. at 12-13; *see also* AR Tab 28 at 9357-59.

> **viii.     NASA Reasonably Assigned A**
> **Weakness For Pinnacle's Proposal To Merge**
> **The Phase-In And Executive Manager Positions**

Pinnacle's objection to NASA's decision to assign a weakness because Pinnacle proposed having one person serve as the phase-in manager and executive manager for the ALICE Contract is also unsubstantiated by the administrative record. Pl. Mot. at 22. While Pinnacle puts forward several persuasive arguments about the potential benefits of having the same person serve in both of these positions in its motion for judgment upon the administrative record, the record evidence shows that NASA assigned a weakness to Pinnacle's proposal due to concerns about whether one person could actually perform both duties. AR Tab 28 at 9360-61; *see* AR Tab 22 at 5639 (requiring a full-time Executive Manager at Ellington Field); AR Tab 24 at 9028-41 (providing a list of responsibilities for the Phase-In Manager); *see also* Pl. Mot. at 22. Pinnacle points to no evidence in the record to show that Pinnacle addressed this concern in its proposal. *See generally* Pl. Mot. at 22; AR Tab 24 at 9042-43. And so, Pinnacle's objection to NASA's decision is simply not supported by the record evidence.

> **ix.     NASA Reasonably Assigned Weaknesses**
> **For Inconsistent Statements And Lack Of**
> **Clarity In Pinnacle's Labor Relations Plan**

Pinnacle's challenges to the remaining two weaknesses that NASA assigned to its proposal under the management approach subfactor are on a somewhat stronger footing.

First, Pinnacle's objection to NASA's decision to assign a weakness because its proposal contains certain inconsistencies regarding the COLAs applicable to exempt DynCorp employees has some merit. Pl. Mot. at 16-18. Pinnacle's proposal states that: (1) COLAs would only be provided for DynCorp employees where they are required pursuant to area wage determinations or a collective bargaining agreement (which NASA interpreted to mean that no COLA would be provided to exempt employees) and (2) labor rate escalations would be provided for exempt DynCorp employees (which NASA interpreted to mean that COLAs would be provided). AR Tab 38 at 11764, 11788-89; *see also* AR Tab 26 at 9310. Pinnacle argues that there is no inconsistency in these two statements, because COLAs and labor rate escalation are distinct concepts. Pl. Mot. at 8-9. But, Pinnacle's argument is belied by other statements in Pinnacle's own proposal which provide that Pinnacle would base the COLAs for exempt employees on the

labor rate escalations.  AR Tab 24 at 9015.  Given this, the Court does not find NASA's decision to assign a weakness due to inconsistencies in Pinnacle's proposal to lack a rational basis.[5]  AR Tab 28 at 9351-52.

Pinnacle's claim that NASA irrationally assigned a significant weakness to its proposal because the agency found Pinnacle's labor relations plan to be insufficient also has some merit. Pl. Mot. at 22-23.  The record evidence shows that NASA assigned this significant weakness because Pinnacle's labor relations plan lacked clarity regarding, among other things, collective bargaining agreements.  AR Tab 28 at 9362-65.  Pinnacle persuasively argues that the significant weakness rating for this subfactor is unreasonable, because Pinnacle's proposed labor relation plan complied with the requirements of the RFP.  Pl. Mot. at 22-23; *see also* AR Tab 21 at 5581. But, even if true, Pinnacle does not explain how NASA's error in assigning this significant weakness prejudiced Pinnacle, given the number of other weaknesses that NASA assigned to Pinnacle's proposal.  *Statistica*, 102 F.3d at 1582; AR Tab 28 at 9340-75.  And so, Pinnacle fails to show that the elimination of this significant weakness would have put Pinnacle in the position of having a substantial chance being awarded the ALICE Contract.  *See Statistica*, 102 F.3d at 1582; Oral Arg. Tr. at 38:1-39:8, 46:13-47:22, 60:23-61:13.

### x.      NASA Reasonably Declined To Assign Strengths To Pinnacle's Management Approach

Lastly, the record evidence also fails to substantiate Pinnacle's claim that NASA should have assigned several other strengths to Pinnacle's proposal with respect to the management approach subfactor.  Pl. Mot. at 37-42.  In this regard, Pinnacle's claim that NASA should have assigned a strength for the overall management approach element because of prior work performed by Pinnacle, or DynCorp, on other contracts is unsubstantiated by the record evidence.  *Id*. at 37-38.

While there is no dispute among the parties that Pinnacle's proposed management approach satisfied the requirements of the RFP, the record evidence makes clear that NASA remained concerned about Pinnacle's approach to managing work schedules and break times.

---

[5] Even if the Court accepts Pinnacle's argument that NASA assigned this weakness in error, Pinnacle has not shown that it was prejudiced by this error, given that NASA also assigned 11 other weaknesses and one significant weakness to Pinnacle's proposal.  *See Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed. Cir. 1996); *see also* Oral Arg. Tr. at 28:17-32:11.

AR Tab 21a at 5596.25; AR Tab 28 at 9340-41.  These reasonable concerns negatively impacted the rating of Pinnacle's proposal under the overall management approach element.  AR Tab 28 at 9340-41; *see also* Def. Mot. at 43-44.  Given this, NASA reasonably declined to assign a strength to Pinnacle's proposal with respect to the overall management approach element.

Pinnacle's claim that it should have received a strength for the staffing approach element is also unsubstantiated by the record evidence.  Pl. Mot. at 39.  Pinnacle correctly notes in its motion for judgment upon the administrative record that its proposal offers to provide an executive manager with management experience involving a unionized workforce and collective bargaining agreements.  *Id.*; *see also* AR Tab 24 at 8915, 8984-85, 8969.  For this reason, the record evidence shows that NASA assigned a strength to Pinnacle's proposal under the staffing approach and contract phase-in approach elements in recognition of Pinnacle's experience with collective bargaining agreements during the reevaluation process.  AR Tab 28 at 9336-37.  But, as discussed above, the record evidence also shows that NASA remained concerned about how the fringe benefits and compensation proposed by Pinnacle would affect Pinnacle's ability to maintain an effective and harmonious workforce.  AR Tab 28 at 9345-48.  Given these concerns, Pinnacle has not shown that NASA should have also assigned a strength for the staffing approach element for Pinnacle's experience with unionized workforces during the reevaluation process for the ALICE Contract.

Lastly, Pinnacle's claim that it should have received a strength for the contract phase-in element is also unsubstantiated by the record evidence.  Pl. Mot. at 40-41.  The administrative record shows that, during the reevaluation process, NASA considered the fact that Pinnacle received positive feedback on its previous contract phase-ins and that Pinnacle proposed to engage the incumbent workforce through after-hours town halls to ensure a smooth transition to the ALICE Contract.  AR Tab 24 at 9042; AR Tab 25 at 9151; AR Tab 35 at 10382.  But, the administrative record also shows that NASA did not assign a strength to any of the three responsive proposals submitted for this procurement based upon the offer to hold after-hours town halls.  AR Tab 36 at 11103-04 (providing a strength for Yulista's phase-in approach, but not based on its proposal to hold after-hours town halls); AR Tab 37 at 11617-18 (providing a strength for Arctic Slope's phase-in approach, but not based on its proposal to hold after-hours town halls).  Pinnacle also fails to point to any support in the administrative record for its argument that its proposal should have received a strength under this element because Pinnacle's

phase-in plan "will result in zero transition risk." *See* Pl. Resp. at 31-32; *see also* AR Tab 24 at 8916-17. And so, Pinnacle's final claim based upon the management approach subfactor also lacks evidentiary support.

### 2. NASA Reasonably Evaluated Pinnacle's Proposal Under The Technical Approach Subfactor

The administrative record also does not support Pinnacle's objections to NASA's evaluation of the technical approach subfactor under the RFP. Rather, the record evidence makes clear that NASA reasonably evaluated Pinnacle's proposal with respect to this subfactor.

First, Pinnacle's objection to NASA's decision to assign a weakness for the technical approach subfactor because Pinnacle included contract management in the baseline under the RFP is belied by the record evidence. Pl. Mot. at 23-24. The administrative record shows that Pinnacle proposed the executive manager and the management team in its base of estimate for the baseline portion of the ALICE Contract. AR Tab 24 at 8929. But, the administrative record makes clear that the RFP classifies such contract management work as indefinite-delivery/indefinite-quantity work, rather than baseline work. AR Tab 22 at 5638. And so, Pinnacle erred in including this work in the baseline portion of the ALICE Contract.[6] AR Tab 28 at 9366-67.

Pinnacle's claim that NASA irrationally assigned a weakness because Pinnacle's non-labor resource estimate was 90% lower than the government's estimate also lacks merit. Pl. Mot. at 24-29; *see also* AR Tab 28 at 9368-70. The RFP requires that offerors develop their own non-labor resource estimates and states that NASA would evaluate proposals based upon the "comprehensiveness, feasibility, soundness, and clarity of the proposed approach." AR Tab 22 at 6147; *see also id.* at 6120. There is no dispute that Pinnacle used actual numbers from another contract—the AMOS contract—and then reduced these figures by 13%, to determine its non-labor resource estimate. AR Tab 24 at 8929. But, Pinnacle points to no evidence in the administrative record to show that it addressed NASA's concern that the decision to use figures from the AMOS contract would not be reasonable within the context of the ALICE Contract.

---

[6] A review of Pinnacle's proposal also shows that that Pinnacle did not provide a supporting rationale for adding any labor categories to the baseline government resources estimate for the ALICE Contract, as also required by the RFP. AR Tab 24 at 8929; *see* AR Tab 22 at 6120; *see also* AR Tab 21 at 5584.

AR Tab 28 at 9368-70; *see generally* AR Tab 24 at 8928-29.  Given this, NASA's decision to assign a weakness under this subfactor is reasonable.  AR Tab 28 at 6368-70.

Lastly, Pinnacle has also not shown that NASA should have awarded a strength to its proposal for Pinnacle's approach to resources.  Pl. Mot. at 41-42.  The administrative record shows that Pinnacle provided a ten-page chart of necessary qualifications, certifications, education, and training that is similar to the RFP's requirements to address this element. *Compare* AR Tab 22 at 5715-29, *with* AR Tab 24 at 8919-29.  But, Pinnacle points to no specific areas where its proposal exceeded the requirements set forth in the RFP.  *See* Pl. Resp. at 32-33. Given this, the Court finds NASA's decision not to award a strength for this subfactor to also be reasonable.

**3.     NASA's Evaluation Of The Safety And
Health Approach Subfactor Was Reasonable**

Thirdly, Pinnacle's claim that NASA irrationally assigned a weakness with respect to the safety and health subfactor is also unsupported by the record evidence.  Pl. Mot. at 25-29.  The administrative record shows that NASA assigned a weakness for this subfactor because Pinnacle: (1) assigned the same person to two different safety positions; (2) did not address NASA's concerns about the fear of reprisals; and (3) did not show that Pinnacle would properly maintain certain documentation.  AR Tab 28 at 9373-75.  There is no dispute among the parties that Pinnacle designated one person to serve as the safety representative and safety and health official for the ALICE Contract.  AR Tab 24 at 9069.  Pinnacle also points to no evidence in the record to show that Pinnacle addressed NASA's concerns about fear of reprisals or failure to maintain documentation in its proposal.  AR Tab 28 at 9375; *see also* AR Tab 24 at 9066-69, 9078-79, 9092.  And so, again, Pinnacle simply has not substantiated its claim based upon the evidence in the administrative record.

**D.     NASA Reasonably Evaluated Pinnacle's
Proposal Under The Past Performance Factor**

The record evidence also shows that NASA appropriately evaluated Pinnacle's proposal with respect to the RFP's past performance factor.  In this regard, Pinnacle argues that NASA failed to consider certain updated CPARS scores that Pinnacle received for three other contracts—the AMOC contract; KC-10 ATS contract; and FRPP&C contract—during the

reevaluation process. *See* Pl. Mot. at 42-45; Pl. Resp. at 33-36; *see also* Oral Arg. Tr. at 26:7-28:12. But, the record evidence shows that NASA did consider updated CPARS scores for Pinnacle with respect to both the AMOC and KC-10 ATS contracts. *See* AR Tab 47 at 12211 (stating that past performance data for all offerors was current as of July 28, 2017); *see also* AR Tab 21a at 5596.8, 5596.20 (providing CPARS for the AMOC and KC-10 ATS contracts, dated November 14, 2016 and April 27, 2017, respectively); Oral Arg. Tr. at 48:8-49:11.

The record evidence also shows that NASA received an updated CPARS for the FRPP&C contract after the reevaluation process concluded and that NASA also deemed this contract to be irrelevant to its evaluation of Pinnacle's proposal. AR Tab 32 at 10325 (providing the CPARS for the FRPP&C contract, dated August 11, 2017); *see also* Oral Arg. Tr. at 49:12-50:21; AR Tab 35 at 10374 (finding the FRPP&C contract "Not Relevant" based on its content, complexity, and size of effort). Given this, the record evidence supports NASA's decision to assign Pinnacle a "moderate confidence" rating for the RFP's past performance factor.[7] *See generally* AR Tab 35.

### E.     NASA's Evaluation Of Yulista's Proposal Was Reasonable

The Court also finds no support in the administrative record for Pinnacle's claim that NASA improperly abandoned certain weaknesses in Yulista's proposal during the reevaluation process. Pl. Mot. at 33-37. In this regard, Pinnacle challenges NASA's decision to abandon a weakness that NASA assigned to Yulista's proposal during the initial evaluation of proposals regarding the contributions of sister companies and subcontractor compensation. *Id.*

The record evidence shows, however, that NASA erroneously assigned a weakness for Yulista's apparent failure to explain how its sister workforce, or other resources, could be relied upon in connection with the ALICE Contract during NASA's initial evaluation of Yulista's

---

[7] Pinnacle correctly argues that NASA did not specifically address whether the revised CPARS scores that the agency considered warranted an updated past performance evaluation for Pinnacle. But, the Court affords NASA significant discretion in making past performance determinations. *See Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 720 F.3d 901, 909-11 (Fed. Cir. 2013) (emphasizing that courts afford agencies broad deference in determining past performance ratings provided that the agency considers the record in its entirety); *Westech Int'l, Inc. v. United States*, 79 Fed. Cl. 272, 293 (2007) ("While the [Source Evaluation Board]'s Report does not provide an exhaustive comparison of [plaintiff]'s past performance . . . that level of detail is not required."). Because the record evidence provides a rational basis for NASA's evaluation of Pinnacle's proposal with respect to the RFP's past performance factor, Pinnacle's claim is unavailing.

management plan.  *Compare* AR Tab 49 at 12264, *with* AR Tab 22 at 5847-48.  As the government points out in its cross-motion, the RFP provides that this information should have been addressed in the past performance portion of Yulista's proposal, rather than in connection with the management plan.  Def. Mot. at 39-40; *see also* AR Tab 22 at 5847-48, 6149.  For this reason, NASA appropriately declined to assign a weakness to Yulista's proposal with respect to the management plan during the reevaluation process.  AR Tab 30 at 10095-113.

Pinnacle's claim that NASA improperly abandoned a weakness regarding the total compensation plan proposed by Yulista's subcontractor, Qualified Technical Services ("QTS"), is also unsubstantiated.  Pl. Mot. at 34-35.  The record evidence shows that NASA initially assigned this weakness because QTS's total compensation plan did not address whether certain workers would receive credit for seniority during the transition to a new contract.  AR Tab 49 at 12265.  But, the administrative record shows that NASA erred in assigning this weakness, because Yulista's proposal states that QTS will recognize the cumulative seniority of all incumbent employees.  AR Tab 36 at 10533; *see also id.* at 11114.  Given this, NASA's decision to not assign a weakness during the reevaluation process is consistent with the RFP and supported by the record evidence.  *See Sotera Def. Sols. v. United States*, 118 Fed. Cl. 237, 262 (2014) ("As long as the agency adheres to the evaluation criteria set forth in the solicitation, the court believes that an agency has the discretion to reevaluate proposals during a corrective action and to correct prior evaluation errors.").

### F.    Pinnacle's Unequal Treatment Claim Is Unsubstantiated

As a final matter, Pinnacle's claim that NASA failed to equally evaluate the management plans proposed by Pinnacle and Yulista is also unsubstantiated by the record evidence.  Pl. Mot. at 29-33.  In its motion for judgment upon the administrative record, Pinnacle argues that NASA irrationally assigned Pinnacle a lower evaluation rating than Yulista because Pinnacle's management plan shares many of the strengths that NASA identified in Yulista's management plan.  *Id.*  But, the record evidence shows that NASA determined that Yulista's management plan contained many other strengths not found in Pinnacle's management plan that justified a significant strength rating.  AR Tab 36 at 11099-100 (finding that Yulista's proposed management plan includes:  [***]).  Given these additional strengths, the record evidence also shows that NASA treated the two offerors equally.

In addition, Pinnacle's claim that NASA failed to equally evaluate the proposals put forward by Pinnacle and Yulista with respect to potential partnership opportunities that could be established with NASA is also unsubstantiated.  Pl. Mot. at 31-33.  The administrative record shows that Yulista's proposal highlighted [***].  AR Tab 36 at 10459.  In contrast, the record evidence shows that Pinnacle did not identify any such existing relationships in its proposal, but, rather Pinnacle proposed that it would hire a marketing manager to help identify potential avenues for partnerships.  AR Tab 24 at 8978.  Given the differences in these two approaches, NASA's decision to assign a higher rating to Yulista's proposal was reasonable and consistent with the requirements of the RFP.  AR Tab 36 at 11105-06.

At bottom, none of the objections that Pinnacle has raised in its motion for judgment upon the administrative record are supported by the administrative record in this matter.  Given this, Pinnacle has simply not shown that NASA erred in conducting the evaluation process for the ALICE Contract or that Pinnacle has been prejudiced by this evaluation process.  *See Statistica*, 102 F.3d at 1582; *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996).  And so, given the lack of support in the administrative record for any of Pinnacle's claims, the Court must **DENY** Pinnacle's motion for judgment upon the administrative record and **GRANT** the government's and Yulista's cross-motions for judgment upon the administrative record.

### G.    Pinnacle Is Not Entitled To Injunctive Relief

Lastly, because Pinnacle has not prevailed upon the merits of any of its claims challenging NASA's evaluation process, Pinnacle has also not demonstrated that it is entitled to the injunctive relief that it seeks in this case.  *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 176 (2005) (holding that a plaintiff that has not actually succeeded upon the merits of its claim cannot prevail upon a motion for injunctive relief).  And so, the Court must also **DENY** Pinnacle's motions for preliminary and permanent injunctive relief and declaratory relief.

## V.    CONCLUSION

In sum, Pinnacle has not met its heavy burden to show that NASA conducted an improper or irrational evaluation process for the ALICE Contract, or that Pinnacle has been prejudiced by any errors during the procurement process.  Rather, the record evidence shows that NASA reasonably evaluated the proposals submitted by Pinnacle and Yulista, and that the agency also

reasonably decided to exclude Pinnacle's proposal from the competitive range for this contract and to award the ALICE Contract to Yulista.  In addition, the government has not shown that it is appropriate to supplement the extensive administrative record in this matter with the Declaration of Perry Lamar Mueller.  And so, for the foregoing reasons, the Court:

1. **DENIES** Pinnacle's motions for judgment upon the administrative record, preliminary and permanent injunctive relief, and declaratory relief;

2. **GRANTS** the government's and Yulista's cross-motions for judgment upon the administrative record;

3. **GRANTS-IN-PART** and **DENIES-IN-PART** Pinnacle's motion to strike and directs the Clerk's Office to **STRIKE** the Declaration of Perry Lamar Mueller; and

4. **DISMISSES** the complaint.

The Clerk shall enter judgment accordingly.

Each party to bear its own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on January 2, 2018.  This Memorandum Opinion and Order shall therefore be filed **UNDER SEAL**. The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication.  The parties shall **FILE** a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction on or before **April 12, 2018**.

**IT IS SO ORDERED.**


s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge